**JOHN L. BURNS, INC.**

v.

**GULF OIL CORPORATION.**

Civ. A. No. 10557.

United States District Court
N. D. Georgia,
Atlanta Division.

Feb. 13, 1967.

Smith, Currie & Hancock, Atlanta, Ga., for plaintiff.

Kilpatrick, Cody, Rogers, McClatchey & Regenstein, Atlanta, Ga., for defendant.

SIDNEY O. SMITH, Jr., District Judge.

This is a suit in which the plaintiff, John L. Burns, Inc. [Burns] sued defendant Gulf Oil Corporation [Gulf] for $23,329.33 representing an amount of Georgia motor fuel tax paid by plaintiff Burns to defendant Gulf as part of the purchase price of fuel. Plaintiff Burns is a highway contractor. Defendant Gulf is a distributor of motor fuels. Plaintiff Burns contracted with the State Highway Department of Georgia to build a new road.[1] During the years 1962, 1963

---

1. Federal Aid Project No. I–75–3(9) 349 CT. 1, in Whitefield and Catoosa Counties, Georgia.

and 1964, defendant Gulf charged as a part of the price of its fuel to plaintiff Burns the Georgia Motor Fuel Tax of 6.5 cents per gallon under Georgia Code § 92–1401 et seq., relying on a series of official opinions of the State Attorney General that such use of fuel for construction of a highway was not exempt from this tax.[2] Pursuant to Georgia Code § 92–1407, defendant Gulf in turn paid the motor fuel taxes collected from plaintiff Burns to the State Revenue Commissioner prior to the 20th day of the following month.[3]

Subsequently, on September 24, 1965, the Georgia Court of Appeals ruled in Haynes v. Twin Tanks Oil Company, 112 Ga.App. 425, 145 S.E.2d 603, that motor fuel purchased for use exclusively in the construction of new highways was exempt from taxation under the Georgia Motor Fuel Tax Act, contrary to the prior opinions of the Attorneys General of Georgia.

Plaintiff then filed this suit for return of the taxes collected by defendant Gulf. Burns has also filed an application for refund of the tax with the State Revenue Commissioner, upon which there has not yet been a ruling.

Defendant Gulf has moved to dismiss this suit on the grounds that as an agent of the State for collection of this tax which was turned over to the State, Gulf cannot be liable to the plaintiff for the taxes paid.

■ Gulf correctly points out that where money is paid to an agent as the result of a mistake, and the agent in turn paid the money in good faith to his principal, the correct remedy of the payor is an action against the principal and not the agent. Georgia Code § 4–403. E. g. —Law and Parker v. Nunn, 3 Ga. 90 (1847); Home Realty Corp. v. Morrow, 27 Ga.App. 385, 108 S.E. 481 (1920); Endicott v. Grogan, 86 Ga.App. 149, 70 S.E.2d 879 (1952); Hodgman Rubber Co. v. Dumaine, 93 F.2d 165 (1st Cir. 1937). Therefore, if defendant Gulf is merely the tax collecting agent for the State of Georgia, and plaintiff Burns is the taxpayer then this suit would be properly dismissed. Conversely, if defendant Gulf is not merely an agent for the collection of taxes, but is the taxpayer under Georgia law, and plaintiff Burns is not the taxpayer, then another situation presents itself.

The Georgia Motor-Fuel Tax Law provides:

"92–1403. *Levy of tax and exemptions.*—An excise tax is hereby imposed on all distributors of motor fuel and/or kerosene:

(A) *Motor Fuel.*—Upon the sale or use of motor fuel by them within this State, at the rate of six and one-half cents per gallon.

\* \* \* \* \* \*

(C) *Persons considered distributors.* — \* \* \*

(1) Every distributor of motor fuels defined in this Chapter shall add the amount of the taxes levied and assessed by this Chapter to the price of such

---

2. Opinion of M. J. Yeomans dated October 8, 1937; opinion of Ellis G. Arnall dated November 30, 1940 [Opinions of the Attorney General, 1939–41, at 555–57]; and opinion of Eugene Cook dated September 10, 1951 [Opinions of the Attorney General, 1950–51, at 385].

3. Affidavit of J. D. Marquis, Regional Comptroller of Gulf, with attached invoices which reflect the following:

| Year | Amount of Motor Fuel (gallons) | Tax Collected and paid to State |
|---|---|---|
| 1962 | 118,161 | $ 7,680.48 |
| 1963 | 171,838 | 11,169.54 |
| 1964 | 56,347 | 3,662.55 |
| | 346,346 | $ 22,512.57 |

The balance of $816.71 tax on 12,565 gallons of fuel claimed to have been paid by Burns is denied by Gulf.

motor fuels, *it being the purpose and intent of this provision that the tax levied under the provisions of this Chapter is in fact a levy on the consumer, and the levy on distributors as specified in said Chapter is merely as agent of the State for collection of said tax.* This provision shall in no way affect the method of collection of. said taxes as specified in this Chapter. The distributor may state the amount of the taxes separately from the price of such motor fuels on all price display signs, sales or delivery slips, bill and statements which advertise or indicate the price of such motor fuel products." (Emphasis added.)

As construed by the Georgia courts, this section clearly indicates that:

"The retailer, like the distributor, of gasoline is not a taxpayer in his capacity of collecting the motor fuel taxes and turning them over to the Commissioner of Revenue." Maynard v. Thrasher, 77 Ga.App. 316, 319, 48 S.E. 2d 471, 473 (1948).

In view of this statutory provision and the Georgia court decisions construing it, there appears to be no question that Burns would be considered the taxpayer and Gulf only an agent for the collection of taxes under Georgia law.

However, Burns contends that if this court dismisses its suit against Gulf on the finding that Gulf was a mere agent and Burns the taxpayer, it is entirely possible that Burns' claim for refund as a taxpayer under State procedure[4] would also be dismissed, based on an opposite finding in state court. In support of its position, Burns cites the apparently contradictory provision of the Georgia Motor-Fuel Tax Law which provides for refunds of erroneously collected fuel taxes to *distributors*[5] and not to the consumer or actual taxpayer as would logically follow from the wording of the previous section of the Act. Georgia Code § 92–1403(C) (1) quoted above.

■ This type of problem could arise out of the nature of the federal judicial system wherein two courts having concurrent jurisdiction over the same subject-matter may reach opposite results although applying the same law. Normally, mere difficulty in applying state law will not prevent a federal court from exercising its jurisdiction. E. g., Meredith v. City of Winter Haven, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943); County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959); Marshall v. Sawyer, 301 F.2d 639 (9th Cir. 1962).

However, where exceptional circumstances exist, a federal court may stay its proceedings until a pending state case involving the same issue is decided. 1A Moore, Federal Practice (2 ed.) 2027 ¶ 0.202. This is particularly true where, as here, the state proceedings are better suited to determine issues on such state functions as tax assessments, collections and refunds. Id. at 2028.

In the case of Louisiana Power & Light Co. v. Thibodaux City, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959) a state statute appeared to be in direct conflict with an opinion of the Attorney General of the State. The Supreme Court reversed a Fifth Circuit Court of Appeals decision that no discretion existed in the trial court to issue a stay in that case based on diversity.[6] The court stated at page 29, 79 S.Ct. at page 1073:

"The special nature of eminent domain justifies a district judge, when his familiarity with the problems of local law so counsels him, to ascertain the meaning of a disputed state statute from the only tribunal empowered to speak definitively—the courts of the State under whose statute eminent domain is sought to be exercised—rather than himself make a dubious and tentative forecast. This court does not constitute abnegation of judicial duty. On the contrary, it is a wise and productive discharge of it. There is only

---

4. Georgia Code § 92–8436.

5. Georgia Code § 92–1418(A).

6. 255 F.2d 774 (5th Cir. 1958).

postponement of decision for its best fruition. Eventually the District Court will award compensation if the taking is sustained. If for some reason a declaratory judgment is not promptly sought from the state courts and obtained within a reasonable time, the District Court, having retained complete control of the litigation, will doubtless assert it to decide also the question of the meaning of the state statute."

As was stated by Justice Black in the majority opinion in Thompson v. Magnolia Petroleum Co., 309 U.S. 478, 483–484, 60 S.Ct. 628, 630, 84 L.Ed. 876 (1940), in referring to a court of bankruptcy:

" * * * the proper exercise of that control may, where the interests of the estate and the parties will best be served, lead the bankruptcy court to consent to submission to State courts of particular controversies involving unsettled questions of State property law and arising in the course of bankruptcy administration. And, under the circumstances of this case, we conclude that it is desirable to have the litigation proceed in the State courts of Illinois. * * * Decision (sic) with which the federal court of bankruptcy is here faced calls for interpretation of instruments of conveyance in accordance with Illinois law. Neither statutes nor decisions of Illinois have been pointed to which are clearly applicable. And the difficulties of determining just what should be the decision under the law of that State are persuasively indicated by the different results reached by the two Circuit Courts of Appeal that have attempted the determination. Unless the matter is referred to the State courts, upon subsequent decision by the Supreme Court of Illinois it may appear that rights in local property of parties to this proceeding have—by the accident of federal jurisdiction—been determined contrary to the law of the State which in such matters is supreme." (footnotes omitted).

Not only is the reasoning of this case applicable here, but the present plaintiff runs the additional risk of being left without a remedy, faced with two contrary decisions of two courts, each court having arrived at a different conclusion by application of the same law.[6a]

The use of a discretionary stay of proceedings by a federal district court is not limited to eminent domain or bankruptcy proceedings,[7] and has been applied to many cases involving unsettled questions of State tax laws.[8] Both the subsequent cases [9] and the articles [10] dealing with

---

6a. To this extent the present holding avoids the delays involved in United Services Life Ins. Co. v. Delaney, 358 F.2d 714 (5th Cir. 1966) and related decisions, wherein no state proceedings had begun at the time of the federal abstention.

7. E.g. Clay v. Sun Insurance Office Ltd., 363 U.S. 207, 80 S.Ct. 1222, 4 L.Ed.2d 1170 (1960); Beach v. Rome Trust Co., 269 F.2d 367, 373–374 (2nd Cir. 1959); 1-A Moore, Federal Practice (2 ed.), ¶ 0.-203[2] at 2121 N. 10 and cases cited therein; Wright, Federal Courts (1963) § 52, "The Abstention Doctrines," at 175. Cf. Louisiana Power & Light Co. v. Thibodaux City, 360 U.S. 25, 28, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959).

8. E.g.–United States v. 150.29 Acres of Land, etc., 135 F.2d 878 (7th Cir. 1943); Matter of Florida East Coast Ry. Co., 49 F.Supp. 527 (S.D.Fla.1943); 1-A Moore, Federal Practice (2 ed.), ¶ 0.203[2].

9. A.F.L. Motors, Inc. v. Chrysler Motors Corp., 183 F.Supp. 56 (E.D.Wisc.1960); See, Green v. American Tobacco Co., 304 F.2d 70, 85–86 (5th Cir. 1962); Commerce Oil Refining Corp. v. Miner, 303 F.2d 125, 128–129 (1st Cir. 1962); Louisiana Power & Light Co. v. Thibodaux City, 360 U.S. 25, 27, 79 S.Ct. 1070, 1072, 3 L.Ed.2d 1058 (1959): "We have increasingly recognized the wisdom of staying actions in the federal courts pending determination by a state court of decisive issues of state law."

10. E.g.–Kurland, "Toward a Co-operative Judicial Federalism: The Federal Court Abstention Doctrine," 24 F.R.D. 481 (1959); Wright, Federal Courts (1963) § 52, "The Abstention Doctrines"; 1-A Moore, Federal Practice (2 ed.), ¶0.203 [2].

this area of the law indicate a growing acceptance of the use of a stay in federal court.

 Accordingly, in view of plaintiff Burns' concurrent state proceeding for refund of the tax, arising out of the same facts and involving the same issues of state law, and in view of the legal possibility that the plaintiff might be left without a remedy, all proceedings in this case are ordered stayed pending a final adjudication of the state claim. In the meanwhile, this court retains jurisdiction over the matter pending such determination. Counsel is further directed to notify the court upon decision in the state proceeding.

It is so ordered.