**James Larry BRADSHAW, et ux., Plaintiffs,**

v.

**ST. PAUL FIRE & MARINE INSURANCE COMPANY, et al., Defendants.**

**No. 82–4065.**

United States District Court, W.D. Arkansas, Texarkana Division.

July 9, 1984.

David Folsom, Young, Patton & Folsom, Texarkana, Ark., for plaintiffs.

Victor Hlavinka, Atchley, Russell, Waldrop & Hlavanka, Texarkana, Tex., for defendants.

## MEMORANDUM OPINION AND ORDER

GEORGE HOWARD, Jr., District Judge.

The diversity jurisdiction of this Court has been invoked by a resident of Sevier County, Arkansas, against the City of Broken Bow, Oklahoma, a municipal corporation organized and existing under the laws of the State of Oklahoma, Albert D. Batson, an employee of Broken Bow and a resident of the State of Oklahoma, and the St. Paul Fire & Marine Insurance Company, the liability insurance carrier for Broken Bow, seeking damages for personal injuries purportedly sustained by plaintiff because of the negligent conduct of Batson in the operation of a motor vehicle owned by Broken Bow, while in the course of his employment, on U.S. Highway 70, in Sevier County, Arkansas.

Broken Bow has filed its motion to quash service of process contending that Broken Bow is a municipality organized under the laws of the State of Oklahoma and "cannot be present in the State of Arkansas, the State of the forum." Broken Bow has also filed its motion to dismiss asserting that it "has not consented to the jurisdiction of this Court and that without its consent, this Court is unable to entertain plaintiffs' complaint as to this municipality."

St. Paul contends that it is not a proper party to this proceeding and therefore should be dismissed asserting that Arkansas' direct action statute (Ark.Stat.Ann. § 66–3240) is:

> ... inapplicable herein inasmuch as said statute cannot properly have extraterritorial applicability to a municipality situated in a sister state nor can the same be engrafted upon a contract of insurance created and existing within a sister state.

The relevant facts, as set forth in plaintiffs' complaint are:

On May 21, 1980, at approximately 11:58 a.m., Albert D. Batson, an employee of Broken Bow, was operating a 1974 Ford truck, owned by the municipality of Broken Bow, in a westerly direction on U.S. Highway 70, when Batson's vehicle struck Bradshaw's automobile, a 1977 Mercury, in the rear.

The issues to be determined by the motions filed by defendants are:

1. Whether this Court has jurisdiction to entertain an action against the municipality of Broken Bow, Oklahoma, by a citizen of Sevier County, Arkansas.

2. Whether Ark.Stat.Ann. § 66–3240 which authorizes direct action by injured persons against the insurance carrier of a political subdivision in the State of Arkansas may be resorted to in this litigation in view of the fact that both Batson and Broken Bow, Oklahoma, are nonresidents of the State of Arkansas and the insurance contract was drafted and executed in the State of Oklahoma.

## I.

■ The Eleventh Amendment to the Federal Constitution provides:

The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state....

Unless a state waives the immunity articulated here, the Eleventh Amendment precludes a federal tribunal from exercising jurisdiction in an action commenced against a state by a citizen of another state. The instant proceeding is not against the State of Oklahoma, but, on the contrary, is against a political subdivision of Oklahoma, the municipality of Broken Bow, Oklahoma. Thus, the question tendered by Broken Bow's motion is whether the Eleventh Amendment precludes this action against a political subdivision of a state. In light of other existing and applicable circumstances involved in this proceeding, the Court has concluded that the issue before the Court may be resolved without adjudicating the constitutional issue present in this action.[1]

Assuming that the municipality of Broken Bow could assert sovereign immunity in this proceeding, sovereign immunity may not be asserted in this case in view of Volume 11 Oklahoma Stat.Ann. § 16.4 where the Oklahoma General Assembly authorizes municipalities of that state to acquire liability insurance coverage for municipally owned vehicles. As such, the governmental immunity from court liability is waived to the extent of any insurance coverage purchased by a municipality of the State of Oklahoma, including Broken Bow.[2] Here, the record discloses that Broken Bow has purchased liability insurance coverage from St. Paul that provides in material part as follows:

Bodily injury liability

$ 50,000.00 each person

$100,000.00 each accident

Property damage liability

$ 25,000.00 each accident.

The liability insurance policy further provides:

F. OUT OF STATE EXTENSION OF COVERAGE.

1. While a covered auto is away from the state where it is licensed, we will:

a. Increase this policy's liability limits to meet those specified by a compulsory or financial responsibility law in the jurisdiction where the covered auto is being used.

b. Provide the minimum amounts and types of other coverage such as "no-fault", required of out of state vehicle by the jurisdiction where the covered auto is being used.

The policy in question was issued to the City of Broken Bow, Oklahoma on September 4, 1979, and extend coverage to September 4, 1980.

---

**1.** It is settled law that a federal court will not "anticipate a question of constitutional law in advance of the necessity of deciding it." *Liverpool, N.Y. & P.S.S. Co. v. Emigration Commissioners*, 113 U.S. 33, 5 S.Ct. 352, 28 L.Ed. 899; *Ashwander v. T.V.A.*, 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688.

**2.** On November 4, 1976, the Attorney General of the State of Oklahoma rendered an opinion which is numbered 76–159 and provides that 11 Oklahoma Stat.Ann. § 16.4 waived any governmental immunity that a municipality might claim and that this waiver extends to all claims whether accruing in connection with a governmental or proprietary function.

Given the fact that Broken Bow has liability insurance coverage and 11 Oklahoma Stat.Ann. § 16.1 makes it clear that any sovereign immunity is waived, the Court rejects the motions of Broken Bow, Oklahoma, to quash service and dismiss this proceeding as to it for lack of jurisdiction.

## II.

Ark.Stat.Ann. § 66–3240 provides:

When liability insurance is carried by any cooperative nonprofit corporation, association or organization or by any municipality, agency or subdivision of a municipality or of the State or by any improvement district, school district, or by any other organization or association of any kind or character, not subject to suit for tort, and any person, firm or corporation suffers injury or damage to person or property on account of the negligence of wrongful conduct of any such organization, association, municipality or subdivision, its servants, agents or employees acting within the scope of their employment or agency, then such person, firm or corporation so injured or damaged shall have a direct cause of action against the insurer with which such liability insurance is carried to the extent of the amount or amounts provided for in the insurance policy as would ordinarily be paid under the terms of the policy, and such insurer shall be directly liable to such injured person, firm or corporation for such damages to the extent of such coverage in such liability insurance policy, and the plaintiff or plaintiffs may proceed directly against the insurer regardless of the fact that the actual tortfeasor may not be sued under the laws of the state.

Plaintiffs instituted this proceeding against St. Paul Fire & Marine Insurance Company pursuant to this statutory provision. St. Paul argues that Arkansas' direct action provision does not have extraterritorial applicability. It is clear that the policy issued by St. Paul was negotiated, issued and delivered in Oklahoma.

Given the contractual provision between Broken Bow and St. Paul designated as "Out of State Extension of Coverage" and "Part III—Where And When This Policy Covers", which provides:

We cover accidents or losses which occur during the policy period:

A. In the United States of America, its territories or possessions, Puerto Rico or Canada; or

B. While the covered auto is being transported between any of these places.

the Court holds that it is implicit in such provision that St. Paul agreed to be amenable to those state provisions where Broken Bow is engaged in activities relating to its policy coverage. It is clear from the plain meaning of St. Paul's policy that St. Paul intended to extend liability coverage to Broken Bow involving the operation of its vehicle whether in Oklahoma or Arkansas. Moreover, Oklahoma's statutory provisions authorizing municipalities to waive governmental immunity by acquiring insurance coverage and St. Paul's out of state extension of coverage clearly make St. Paul the real party in interest in this proceeding. St. Paul's contract with Broken Bow does not provide that the law of Oklahoma would control or govern when litigation is instituted in any other state of the nation. In this regard, the Court is persuaded that the dissenting opinion of the late Mr. Justice Black in *Clay v. Sun Insurance Office*, 363 U.S. 207 at 221, 80 S.Ct. 1222 at 1230, 4 L.Ed.2d 1170, is illustrative here:

Insurance companies, like other contractors, do not confine their contractual activities and obligations within state boundaries. They sell to customers who are promised protection in States far away from the place where the contract is made. In this very case the policy was sold to Clay with knowledge that he could take his property anywhere in the world he saw fit without losing the protection of his insurance. In fact, his contract was described on its face as a 'Personal Property Floater Policy (World Wide).' The contract did not even attempt to provide that the law of Illinois would govern when suits were filed anywhere else in the country. Shortly after

the contract was made, Clay moved to Florida and there he lived for several years. His insured property was there all that time. The company knew this fact. Particularly since the company was licensed to do business in Florida, it must have known it might be sued there, and that Florida courts would feel bound by Florida law.

As the real party in interest, the Court holds that paragraph E of "Part VI—Conditions" which provides as follows is inapplicable in this proceeding:

No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, under LIABILITY INSURANCE, no legal action may be brought against us until we agree in writing that the insured has an obligation to pay or until the amount of that obligation has been finally determined by judgment after trial. No person or organization has any right under this policy to bring us into any action to determine the liability of the insured.

Accordingly, the Court concludes, in predicting what the Arkansas Supreme Court is likely to conclude if it were called upon to resolve the direct action issue against St. Paul, defendants' motions to quash and dismiss should be denied.