**DIVISION 1287, AMALGAMATED ASSOCIATION OF STREET, ELECTRIC RAILWAY AND MOTOR COACH EMPLOYEES OF AMERICA, AFL–CIO, Plaintiff,**

v.

**John M. DALTON, Governor of the State of Missouri, State of Missouri Board of Mediation, Daniel C. Rogers, Individually and as Chairman of the State of Missouri Board of Mediation, Charles Bibbs, Individually and as Member of the State of Missouri Board of Mediation, Albert Fults, Individually and as Member of the State of Missouri Board of Mediation, J. Raymond Lambright, Individually and as Member of the State of Missouri Board of Mediation, and Truman Henry, Individually and as Member of the State of Missouri Board of Mediation, Defendants.**

No. 784.

United States District Court
W. D. Missouri,
Central Division.
June 22, 1962.

John J. Manning and Robert S. Fousek, Kansas City, Mo., Bernard Cushman, Bernard Dunau, Washington, D. C., for ·plaintiff.

Thomas F. Eagleton, Atty. Gen., by J. Gordon Siddens, Asst. Atty. Gen., Jefferson City, Mo., for defendant.

Before RIDGE, Circuit Judge, and DUNCAN and BECKER, District Judges.

BECKER, District Judge.

This is a suit brought by a mass transit employees' union for a restraining order, injunction and declaratory judgment against officials of the State of Missouri, involving the validity of Missouri's Public Utility Seizure and Anti-Strike Law. This law, known as the King-Thompson Act, authorizes the Governor of Missouri to seize and operate a public utility affected by a work stoppage when, in his opinion, the public interest, health and welfare are jeopardized.

*Pending Legal Actions in Federal and State Courts*

On November 14, 1961, the plaintiff Union filed this suit for declaratory judgment, restraining order, and for temporary and permanent injunctions, attacking the validity of the King-Thompson Act[1] on the charge of conflict with the National Labor Relations Act[2] and on many separate charges of unconstitutionality.

On November 15, 1961, the State of Missouri filed in the Circuit Court of Jackson County a petition for a restraining order and injunction to enforce the no-strike provisions of the King-Thompson Act, securing an immediate tempo-

---

.1. The entire Act, Chapter 295, Revised Statutes of Missouri, 1959, §§ 295.010–295.210, inclusive, V.A.M.S. See Amalgamated Association, etc. v. Wisconsin Employment Relations Board, 340 U.S. 383, 71 S.Ct. 359, 95 L.Ed. 364, 22 A.L.R. 2d 814, invalidating a Wisconsin Public Utility Anti-Strike Law which differs from the Missouri King-Thompson Act in that the Wisconsin Act (1) provided for compulsory arbitration, (2) did not provide for seizure and (3) was not limited to emergencies jeopardizing the public inter- ·est, health and welfare. Compare State

v. Local No. 8–6 (Mo.Sup.1958) 317 S.W. 2d 309, en banc, judgment vacated as moot, Local 8–6 v. Missouri, 361 U.S. 363, 80 S.Ct. 391, 4 L.Ed.2d 373. There are other distinctions and perhaps real differences in the two acts. Shute, A Survey of Missouri Labor Law, Part VII, 18 Mo.L.Rev. 93, 1. c. 154–192 (153).

2. 61 Stat. 136, Title 29 U.S.C. §§ 141–187, 29 U.S.C.A. §§ 141–187, allegedly in violation of Section 8 of Article I and Article VI of the Constitution of the United States. This is the claim of "preemption."

rary restraining order against continuance of the strike.

On November 27, the writer, acting as Judge of the United States District Court, denied the Union's motion for a temporary restraining order against the seizure and enforcement through state court suit of the King-Thompson Act. However, the Union's request to convene a Three-Judge Court to hear the Union's complaint was sustained.[3] This Three-Judge Court was duly convened.

### Judgment and Appeal in the State Court

The Circuit Court of Jackson County, on November 27 and 28, 1961, heard the state court suit on the merits. After evidence was heard, the temporary restraining order was continued in force. Finally, on February 12, 1962, a permanent injunction was granted in a judgment upholding the seizure and enjoining the strike.

An appeal from this judgment to the Missouri Supreme Court was taken by the Union. This appeal was submitted on briefs without oral argument to expedite its determination. There is every evidence that the Missouri courts are adjudicating the state court suit with unusual speed.

### Issues in the State Court Suit

The Union concedes that it defended the state court suit for enforcement of the seizure and anti-strike provisions upon all grounds of preemption and unconstitutionality decided previously in Local 8–6 v. State [4] and also on two additional grounds stated in its brief [5] in the Supreme Court of Missouri, as follows:

"(c) As applied in this case, the King-Thompson Act (i) operates ex-

---

3. Division 1287, Amalgamated Association of Street, Electric Railway and Motor Coach Employees of America, AFL-CIO v. Dalton, 206 F.Supp. 625.

4. (Mo.Sup.1958) 317 S.W.2d 309, en banc, vacated as moot, 361 U.S. 363, 80 S.Ct. 391, 4 L.Ed. 373.

5. Page 11, Brief for Appellants, Cause No. 49377 in the Supreme Court of Missouri, en banc. In the state trial court the points were argued by able counsel for the Union, in part as follows:

"If Your Honor please, as of course Your Honor is aware, the Supreme Court of Missouri, in State of Missouri versus Local No. 8–6, Oil, Chemical and Atomic Workers International Union has passed for its purposes on the King-Thompson Act. It has ruled that the King-Thompson Act is not pre-empted by the Taft-Hartley Act. It has also ruled it is not vulnerable to attack on the 1st and 14th Amendment grounds. It would be pointless for us to argue to Your Honor in view of that decision that these questions are still open before you so on those questions I simply want to state we are preserving those points but do not argue them to Your Honor.

"There are two additional points which in our view are not foreclosed by the decision of the Missouri Supreme Court and which we do address to Your Honor. The first is the question of the existence of a state of jeopardy to interest, health and safety within the meaning of the King-Thompson Act. In the decision of the Supreme Court of Missouri in the Oil, Chemical and Atomic Workers case, the Supreme Court noted as follows: 'It is quite clear that the patrons of Laclede Gas Company were not furnished with safe and adequate service after the strike began. The strike had been in progress for five days before the Governor exercised his emergency powers and it was four days later before the State filed suit. The evidence demonstrates concludedly that the public health, safety and interest was jeopardized and that the Governor had reasonable cause to take action.'

"In our view on the record in this case there was no reasonable cause to take action. All that the record establishes by way of jeopardy is that there would be a reduction in the retail sales in the downtown Missouri area. We hardly think that a reduction in the retail sales in the downtown Missouri area constitutes jeopardy to interest, health and safety within the meaning of the King-Thompson Act.

"I think that the point we want to make was epitomized in the testimony of Mr. Austin who stated that the $5.00 sale of a tie you do not make today you do not make. That may be true, I rather doubt it, but whether or not you make it, you do not jeopardize interest, health and safety by not making that sale. That is all that this evidence shows concrete with respect to an effect upon the community.

traterritorially, and therefore conflicts with the constitutional requirement that a state confine its authority within its own borders; and (ii) directly regulates interstate commerce, and therefore offends the Commerce Clause of the United States Constitution independently of implementing legislation by Congress.

"(d) The actual or threatened strike against the Company did not jeopardize the 'public interest, health and welfare' within the meaning of the King-Thompson Act."

In moving in the Supreme Court of Missouri for summary affirmance [6] the Union attempted to withdraw these additional questions on which the Missouri Supreme Court has not previously expressed itself.

*Ruling Staying Cause Pending Determination of State Court Action*

█ The defendant State officials have moved this Court to dismiss or to stay this action on the doctrine of abstention. The Union opposes this motion and

> "I think the testimony of the Mayor was quite accurate. Substantial inconvenience no doubt would result but substantial inconvenience is not jeopardy to interest, health and safety. His Honor told us that the hospitals would continue to function, the police stations would continue to operate, public utilities would continue to function, industrial plants would continue to work. That is all that one can expect in a contemporary community if the right to strike is to be preserved at all. And the King-Thompson Act does not purport to destroy the right to strike, it purports to regulate public utilities when there is a strike. On this record there is no such showing.
>
> * * * * *
>
> "Kansas City Transit, Inc., operates in Kansas and Missouri. There is no constitutional power in the State of Missouri to enjoin a strike against the Kansas City Transit, Inc., without the State of Missouri. The State of Missouri has no power to have its statutes operate extraterritorially."

6. To save time in perfecting an appeal to the Supreme Court of the United States.

7. Railroad Commission of Texas v. Pull-

has moved for summary judgment on the merits. We have decided to stay this proceeding until the final determination of state court action now pending on the appeal submitted to the Supreme Court of Missouri. This decision includes deferring decision on plaintiff's motion for summary judgment. The reasons for this discretionary ruling follow.

█ Where (1) unsettled questions of state law are enmeshed with federal questions in determining the validity and constitutionality of a state law or of state action,[7] and (2) the state law problems are delicate ones, resolution of which is not without substantial difficulty,[8] proper exercise of federal jurisdiction requires that the controversy be decided in the state tribunal preliminary to a federal court's consideration of the underlying federal questions, usually a federal constitutional question.[9] This is the "doctrine of abstention." The doctrine is not founded upon lack of power or jurisdiction but upon a sound judicial discretion of the District Court to decline to exercise jurisdiction in a proper

man, 312 U.S. 496, 61 S.Ct. 643, 85 L. Ed. 971; Spector Motor Service, Inc. v. McLaughlin, 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101; Meridian v. Southern Bell Telephone Co., 358 U.S. 639, 79 S.Ct. 455, 3 L.Ed.2d 562.

8. City of Meridian v. Southern Bell Telephone Co., 358 U.S. 639, 79 S.Ct. 455, 3 L.Ed.2d 562.

9. Railroad Commission of Texas v. Pullman, 312 U.S. 496, 61 S.Ct. 643, 85 L. Ed. 971; United Gas Pipe Line Co. v. Ideal Cement Co., 369 U.S. 134, 82 S.Ct. 676, 7 L.Ed.2d 623; Chicago, Burlington & Quincy R. Co. v. City of North Kansas City (C.A.8) 276 F.2d 932, l. c. 937–940; Annotations 94 L.Ed. 879 and 3 L. Ed.2d 1827; 1A Moore's Federal Practice, ¶ 0.203, p. 2101 et seq.; 1 Barron & Holtzoff, Federal Practice and Procedure, § 64, p. 339 et seq. In Alabama State Federation of Labor, etc. v. McAdory, 325 U.S. 450, 65 S.Ct. 1384, 89 L.Ed. 1725, the doctrine was applied by the Supreme Court of the United States in dismissing certiorari to review an Alabama Supreme Court decision in a declaratory judgment action challenging the validity of a state statute regulating labor unions.

case.[10] It is applicable in cases of federal jurisdiction not involving charges of violation of the Federal Constitution.[11] Therefore, the doctrine of abstention is applicable in this case whether the question of preemption be considered a constitutional question or a question of statutory construction.

■ In essence, the doctrine of abstention arose from federal policies of avoiding unnecessary decisions, of avoiding presumptuous and possibly erroneous first constructions of state statutes, and of avoiding needless friction between the federal and state systems. These themes recur in the many cases applying and refusing to apply the doctrine.

■ If anything prevents a prompt state court determination, this Court retains the power to take appropriate action necessary for a just disposition of this litigation.[12]

■ It has been suggested that because this case was filed before the state court action, that the doctrine of abstention does not apply. This contention is not supported by reason or precedent. The application of the doctrine does not depend upon the result of a race to the state and federal courthouses. It may be applicable where the state court suit is filed after the federal action is filed [13] or even where the state court suit has not been, but can be, filed.[14]

10. Louisiana Power & Light Co. v. Thibodaux, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058. See also Kurland, The Federal Court Abstention Doctrine, 24 F.R.D. 481. It is not necessary to determine the soundness of the defendants' contention that § 2283, Title 28 U.S.C. deprives the Court of jurisdiction to grant the relief sought by the Union in this case. The provision relied on reads as follows:

"A court of the United States may not grant an injunction to stay proceedings in a State Court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

The defendants and *amici curiae* contend that this statute forbids the issuance of the injunction or the entry of declaratory judgment sought by the Union, regardless of the principles of the doctrine of abstention, citing, *inter alia*, Oklahoma Packing Co. v. Oklahoma Gas & Electric Co., 309 U.S. 4, 60 S.Ct. 215, 84 L.Ed. 537; H. J. Heinz Co. v. Owens (C.A. 9) 189 F.2d 505, reh. den., 9 Cir., 189 F.2d 505, cert. den., 342 U.S. 905, 72 S. Ct. 294, 96 L.Ed. 677. Furthermore, on the application of the abstention doctrine in a case involving a claim of preemption, the defendants rely on a 1955 decision adopted by a 5–3 vote of the Supreme Court of the United States, with Mr. Justice Harlan not voting. Amalgamated Clothing Workers of America v. Richman Brothers, 348 U.S. 511, 75 S.Ct. 452, 99 L.Ed. 600. Only Mr. Justice Frankfurter and Mr. Justice Clark of the five man majority remain on the Court. All dissenters and Mr. Justice Harlan remain. Whether this opinion would be

followed today is not known. The question is annotated in 99 L.Ed. 614. The dual problem of the application of the abstention doctrine and of the restrictions of § 2283 were discussed in Leiter Minerals v. United States, 352 U.S. 220, 77 S.Ct. 287, 1 L.Ed.2d 267. In a case similar to this involving a New Jersey statute, the Court granted a stay to the state officials, against whom an injunction was sought. Traffic Telephone Workers Federation, etc. v. Driscoll, restraining order granted, D.C., 71 F.Supp. 681, injunction denied and stay granted, D.C., 72 F.Supp. 499, appeal dismissed, 332 U.S. 833, 68 S.Ct. 221, 92 L.Ed. 406.

We hold that the doctrine of abstention applies in this case, considered apart from § 2283. Application of defendants' construction of § 2283 would also warrant the denial of the relief sought by the Union.

11. Thompson v. Magnolia Petroleum Co., 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876; Clay v. Sun Ins. Office Ltd., 363 U.S. 207, 80 S.Ct. 1222, 4 L.Ed.2d 1170; 1 Barron & Holtzoff, Federal Practice and Procedure, § 64 (Supp.1962, pp. 69–70); 1A Moore, Federal Practice, ¶ 0.203(2), p. 2115.

12. Louisiana Power & Light Co. v. Thibodaux, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058.

13. City of Chicago v. Fieldcrest Dairies, 316 U.S. 168, 62 S.Ct. 986, 86 L.Ed. 1355.

14. Clay v. Sun Ins. Office Ltd., 363 U.S. 207, 80 S.Ct. 1222, 4 L.Ed.2d 1170; Chicago, Burlington & Quincy R. Co. v. City of North Kansas City (C.A.8) 276 F.2d 932; Annotation, 3 L.Ed.2d 1827.

In the case at bar, two unsettled questions of state law have been litigated in the Jackson County Circuit Court. These are the questions of extraterritoriality and propriety of the Governor's proclamation when considered in light of the actual facts. The Union has attempted to "withdraw" these litigated questions from consideration by the Supreme Court of Missouri.

 In Missouri the scope of review cannot be regulated by an appellant, particularly in non-jury cases. The Supreme Court of Missouri has the power, ordinarily exercised, to pass upon all legal and factual issues presented by the record and to render such judgment as the trial court should have rendered. The review is de novo on the record made in the trial court.[15]

We have given consideration to the limitations on the doctrine of abstention reviewed in the authorities cited herein, and in plaintiff's brief, but find them inapplicable here.[16]

 We accept the statement of the nature of the doctrine as an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy before it.[17] We are conscious of the need for exceptional circumstances to justify invocation of the doctrine.

We find present in this case the following principal exceptional circumstances, *inter alia,* on which we base the action in this case:

(1) Presence of two substantial unsettled questions of state law, either of which if resolved against the state, will make this case moot.

(2) Unusual speed in processing the state court case to the point of submission of the appeal.

(3) Cooperation of state officers in expediting the state court case, including suspension of the ordinary rules of oral argument and submission.

(4) Desirability of avoiding needless friction between the state and federal officials and courts in a sensitive area of great public concern.

(5) Undoubted confidence in the sincerity and good faith of the officials and counsel of Missouri.[18]

These, among other factors, have appealed to our discretion to exercise the power of abstention.

For the reasons we have stated, the defendants' motion to stay this proceeding is sustained and the defendants' motion to dismiss is overruled. Decision on plaintiff's motion for summary judgment is deferred.

It is so ordered.

15. Missouri Civil Rule 73.01(d), V.A.M.R.; Hubert v. Magidson (Mo.Sup.1951), 243 S.W.2d 337, l. c. 341; Milanko v. Austin (1951), 362 Mo. 357, 241 S.W.2d 881, where there were no sufficient assignments of error by appellant. Furthermore, in this case *amici curiae* have raised and briefed the unsettled questions which the Missouri Supreme Court may consider in cases of public interest such as this. State ex rel. News Corporation v. Smith (1945), 353 Mo. 845, 184 S.W. 2d 598, l. c. 600, en banc.

16. This Court is indebted to counsel for the Union, to counsel for the State and to Counsel for *amici curiae* for splendid briefs and arguments. The oral argument of Bernard Dunau, Esquire, of Washington, D. C., for the Union was excellent. The Union's briefs are exceptionally well organized, clear and comprehensive. Counsel for the defendant State officials and counsel for *amici curiae* have presented equally forceful arguments and briefs which would be expected of such experienced and able advocates.

17. County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 79 S.Ct. 1060, 3 L. Ed.2d 1163; Meredith v. Winter Haven, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9.

18. And in the sincerity and good faith of the Union officials and Union counsel.