James Earl **WHITE**, Glen William White, and Stephen Eugene White, minors, by and through their guardian ad litem, Phyllis M. White, Plaintiffs,

v.

**HUSKY OIL COMPANY**, a corporation, and Walter Parker, Defendants.

Civ. No. 576.

United States District Court
D. Montana,
Billings Division.
April 5, 1967.

Sullivan, Guterson, LaRose & Rindal, Seattle, Wash., and Cooke, Moulton, Bellingham, Longo & Mather, Billings, Mont., for plaintiffs.

Anderson, Symmes, Forbes, Peete & Brown, Billings, Mont., for defendant Husky Oil Co.

## ORDER AND MEMORANDUM OPINION

JAMESON, Chief Judge.

The defendant Husky Oil Company has moved for summary judgment, contending that there is no genuine issue as to any material fact and that under the well settled law of Montana Husky is entitled to a judgment as a matter of law. Plaintiffs resist the motion, contending that under the facts and inferences which may be drawn therefrom a jury issue is presented. Both sides have filed briefs and supplemental briefs.

The plaintiffs were passengers in an automobile which stopped for servicing at a filling station in Laurel, Montana, owned by the defendant Walter Parker. Parker's son was filling an underground storage tank from a larger tank above ground. He left the filling process unattended while he waited on the Whites. Gasoline overflowed from the tanks to that portion of the filling station where the White car was parked, and ignited.

The three plaintiffs were injured. The boys' father and a brother were killed.

Suit was instituted in state court on February 24, 1965, for the death of the father. Ten months later, on December 23, 1965, the present suit was instituted in this court.[1] Numerous depositions were taken in state court, and interrogatories and requests for admissions were answered. The only discovery in this court was a request for admissions. The requests and answers were identical to those filed in state court. Aside from a deposition filed November 15, 1966, nothing has been filed in the state court action since March 7, 1966. The deposition filed in November was taken in February, 1966.

On November 7, 1966, Husky filed its motion for summary judgment in this court. It was stipulated that the depositions taken in the state court action and the answers to interrogatories submitted to the defendant in that case could be considered by this court in deciding the motion for summary judgment. No motion for summary judgment has been filed in state court.

It is agreed that (1) both the state court action and this action involve the same facts, (insofar as the present motion is concerned), (2) the legal issues are the same, (3) no question of federal law is presented, and (4) both cases are governed by Montana law. There is no suggestion of any congested docket in the state court or that any delay would be encountered in having a motion for summary judgment determined in that court.

Husky contends that the Montana law is well settled.[2] Plaintiffs contend that there is no Montana case in point and that the "facts of the case, as supported by the depositions and interrogatories considered, give rise to numerous theories under which the liability of Husky Oil Company may be established". If

---

1. Jurisdiction is based on diversity of citizenship, with the requisite amount in controversy, pursuant to 28 U.S.C. § 1332.

2. Husky contends "that under the undisputed facts (1) plaintiffs must rely on ostensible agency, (2) before plaintiffs can recover, they must show reliance on the acts of Husky creating ostensible agency, and (3) the admitted facts show there was in fact no such reliance." Plaintiffs dispute these contentions.

there is no issue as to any material facts and the law of Montana is well settled, as Husky contends, there would seem to be no reason why the state court would not grant summary judgment on the basis of the discovery conducted in that court. If the Montana law is not well settled, as plaintiffs contend, should not the legal issues presented by the present motion be determined by the state court?

■ It is true, as Husky argues, that this action was instituted by plaintiffs in this court and that Husky has a statutory right to have this court exercise jurisdiction. As a general rule, when jurisdiction is properly invoked, it is the duty of federal courts to decide questions of state law when necessary to the rendition of a judgment. On the other hand, as Professor Charles Alan Wright, has well stated:

> " * * * In the last two decades there has been considerable recognition of circumstances under which a federal court may decline to proceed though it has jurisdiction under the Constitution and the statutes. The cases in which this has been recognized are usually referred to as establishing the 'abstention doctrine,' but it is more precise to refer to 'abstention doctrines' since there are at least four distinguishable lines of cases, involving different factual situations, different procedural consequences, different support in the decisions of the Supreme Court, and different arguments for and against their validity." (Wright on Federal Courts § 52 p. 169).

One of the four doctrines, according to Professor Wright, is "to leave to the states the resolution of unsettled questions of state law".

■ No uniform rules have been enunciated by the courts for determining when this doctrine is applicable, and the commentators, as well as the courts,

are not in complete agreement. Part of the disparity in view results from differences in the factual situations under consideration. "Ascertainment of whether there exist the 'special circumstances' * * * prerequisite to its (abstention) application must be made on a case-by-case basis". Baggett v. Bullitt, 1964, 377 U.S. 360, 375, 84 S.Ct. 1316, 12 L.Ed.2d 377.

I find no case which has considered a situation analogous to this case. Here in effect this court, through a motion for summary judgment, is asked to determine a controlling question of Montana law based primarily upon discovery conducted in a state court action involving the same facts and legal questions.

On June 8, 1959, the Supreme Court decided four cases (all by a divided court) involving the "abstention doctrines". In Louisiana Power & Light Co. v. City of Thibodaux City, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058[3] the Court held that the district court properly exercised its power to stay proceedings in an eminent domain action pending a "prompt state court construction of a state statute of dubious meaning". The Court said in part: "We have increasingly recognized the wisdom of staying actions in federal court pending determination by a state court of decisive issues of state law". (360 U.S. at 27, 79 S.Ct. at 1072).

In an article entitled "Toward a Cooperative Judicial Federalism: The Federal Court Abstention Doctrine", 24 F.R. D. 481, Professor Philip B. Kurland (after discussing the four Supreme Court cases) suggests the advisability of (1) utilizing "the special expertise of each of two judicial systems, State and federal", and (2) economizing "on the use of the systems so that one lawsuit will suffice to dispose of the problem rather than permitting two with the possibility of conflicting results as well as multiple costs". (24 F.R.D. 487).

3. The other cases decided June 8, 1959, are Martin v. Creasy, 360 U.S. 219, 79 S.Ct. 1034, 3 L.Ed.2d 1186; Allegheny County v. Frank Mashuda Co., 360 U.S. 185, 79 S.Ct. 1060, 3 L.Ed.2d 1163; and Harrison v. N. A. A. C. P., 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152.

With reference to the first problem, Professor Kurland says in part:

"I start with the principle that the federal courts are the primary experts on national law just as the State courts are the final expositors of the laws of their respective jurisdictions. The difficulties would be simple of resolution if all cases presented either federal questions or State questions.[4] * * *" "* * * But the pronouncement of the obligation of federal courts to follow State law as expounded by State courts didn't solve the difficulties where, as in the cases decided on June 8, the State law was not clear, either because there were no authoritative decisions by the State courts or because State authorities appeared to be in conflict. The Supreme Court, therefore, in the Pullman case [5] without authorization from Congress, created the doctrine of abstention which was utilized in the Louisiana Power, the N. A. A. C. P., and Creasy cases. Of primary use in cases of constitutional significance, the doctrine has spread beyond them. If the Supreme Court in the past has been rather timid in making use of this device, Mr. Justice Brennan is probably right in seeing in Louisiana Power the precursor of a wider use of the doctrine." (24 F.R.D. 487-488).

With reference to the second problem, Professor Kurland says in part:

"* * * Heretofore the pendency of an action in the State courts has not necessarily been a bar to the commencement of a proceeding in the federal courts, raising the very same questions. But some federal judges, such as Learned Hand, have recognized the wisdom of such judicial economy. It hardly seems appropriate that, with our judicial resources taxed to the extent they are, actions should proceed simultaneously in both courts with the judgment in one ultimately to be utilized as res judicata in the second." (24 F.R.D. 490-491).[6]

In support of this conclusion, Professor Kurland relies in part upon Judge Learned Hand's opinion in Mottolese v. Kaufman, 2 Cir.1949, 176 F.2d 301, 302, where the court upheld a stay of proceedings in a stockholders derivative suit, pending the determination of a prior state court action. Judge Hand said in part:

"It is probably true that originally the statutory privilege of access to a federal court was regarded as absolute and indefeasible, no matter whether its exercise resulted in inconvenience, delay and expense to the defendant. There can be no doubt, however, that this is no longer true. One of the many exceptions is when a critical issue in the federal action is the proper construction of a state constitution, or statute."

After listing other exceptions, Judge Hand continued:

"* * * These are all instances of discretionary power to stay the federal action, because a proper regard for the autonomy of the states makes that course desirable. However, the Ninth Circuit in Butler v. Judge of the United States District Court,[7] as we read its opinion, sustained a stay of the federal action, merely because the same issues were involved in an earlier action

---

4. Professor Kurland's article is cited by the Supreme Court in England v. Louisiana State Board of Medical Examiners, 1963, 375 U.S. 411, 416, 84 S.Ct. 461, 11 L.Ed.2d 440, in support of the statement: "Its (abstention) recognition of the role of state courts as the final expositors of state law implies no disregard for the primacy of the federal judiciary in deciding questions of federal law".

   The instant motion of course presents solely a question of controlling state law.

5. Railroad Commission of Texas v. Pullman Co., 1941, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971.

6. Some commentators do not share Professor Kurland's conclusion that the mere pendency of a state court action involving the same issue may justify the stay of proceedings in federal court. See, e. g., Wright on Federal Courts, § 52, p. 177.

7. Butler v. Judge of United States District Court, 9 Cir. 1941, 116 F.2d 1013.

in the state court between the same parties; * * * "

In Butler it was held that the trial court had discretion to postpone trial until decision in a prior action in the state court involving substantially the same question. This was a quiet title action and the court emphasized the fact that title to real property, peculiarly a local matter, was involved. On the other hand, it also recognized the duty of avoiding "unseemly conflict with a state court". On this point the court said:

"In Landis, et al. v. Northern American Co., 299 U.S. 248, 57 S.Ct. 163, 166, 81 L.Ed. 153, the Supreme Court, speaking through Justice Cardozo, emphasized the duty of the trial court in the exercise of its discretion to avoid unseemly conflict with a state court. The court there stated: 'Viewing the problem as one of power, and of power only, we find ourselves unable to assent to the suggestion that before proceedings in one suit may be stayed to abide the proceedings in another, the parties to the two causes must be shown to be the same and the issues identical. * * * Apart, however, from any concession, the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.' " [8] (116 F.2d 1016).

In Mach-Tronics, Incorporated v. Zirpoli, 9 Cir. 1963, 316 F.2d 820, the court held that the abstention doctrine was not applicable to a federal treble damage action for violation of federal antitrust laws against the defendant corporations, one of which had previously instituted action in state court against plaintiff in a treble damage action for alleged unfair competition, breach of confidential relationship, and wrongful appropriation of trade secrets. Factually that case is distinguishable. This is clear from the following excerpts from the majority opinion:

"* * * There is no need for determination of the meaning of state law, either statutory or decisional. * * *

"Here taking both the case in the federal court and the case in the state court, we can find nothing for decision in either case except questions of fact. There cannot be any suggestion that there is any doubt as to state law. * * *" [9] (316 F.2d at 827).

In the instant case if no question of state law were involved and there were "nothing for decision in either case except questions of fact", obviously there would be no reason why this court should not proceed to trial without reference to the action in state court. The present motion, however, involves solely a question of state law. This court is asked to determine that the "state law is well settled", although that is disputed by counsel for plaintiffs.

It is true, as counsel for Husky contend, that ordinarily abstention is ordered only upon application of one of the parties for a stay of proceedings. In a proper case, however, the court may of its own motion postpone the exercise of its jurisdiction pending determination by the state court of a controlling question of state law.[10]

---

8. See also 1A Moore's Federal Practice, 2102, ¶ 0.203(1).

9. Both the majority opinion by Judge Pope and the dissenting opinion by Judge Duniway review many cases relating to the abstention doctrine. No case cited is precisely in point. In determining whether the doctrine is applicable it is necessary to consider and to some extent reconcile all factors bearing upon various applications of the doctrines.

10. While not factually in point, it was held in Tomiyasu v. Golden, 9 Cir. 1966, 358 F.2d 651, that the district court erred in granting a motion for summary judgment and should have refused to exercise jurisdiction and abstained from deciding certain questions relating to state court procedures. It does not appear that either party had applied for a stay.

 In Division 1287, Amal. Ass'n of St., Elec. Ry., Etc., Emp. v. Dalton, W.D. Mo.1962, 206 F.Supp. 629, the court granted the defendant's motion to stay proceedings and deferred the plaintiff's motion for summary judgment when resolution of the controlling issue was pending in the state court. Although the court accepted the statement of the nature of the doctrine of abstention as "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy before it," one of the exceptional circumstances supporting abstention was the "[d]esirability of avoiding needless friction between the state and federal officials and courts * * *." 206 F.Supp. at 635.

After analyzing numerous decisions on the subject, the court concluded:

"In essence, the doctrine of abstention arose from federal policies of avoiding unnecessary decisions, of avoiding presumptuous and possibly erroneous first constructions of state statutes, and of avoiding needless friction between state and federal systems. These themes recur in the many cases applying and refusing to apply the doctrine.

"If anything prevents a prompt state court determination, this Court retains the power to take appropriate action necessary for a just disposition of this litigation." (206 F.Supp. at 634).

Regardless of the decision of this court on the motion for summary judgment, it seems probable the losing party would raise the same question in the state court action. A determination of this question of state law first by the state court would not result in any delay in the trial in either court.[11] On the contrary

it might well expedite final disposition of both cases.

Abstention will avoid any possibility of "that unseemly conflict between two sovereignties which the doctrines of comity and abstention are designed to avoid". Glen Oaks Utilities, Inc. v. City of Houston, 5 Cir. 1960, 280 F.2d 330, 334.

 Decision on the motion for summary judgment will be reserved pending determination in the state court of the questions of state law presented by the motion.

---

11. Abstention here does not involve any "shunting of litigants" from federal to state court which would expose them to any "unusual expense or delay" or in any way "deprive them of the right" to a federal court's "determination of their federal claims". Cf. England v. Louisiana State Board of Medical Examiners, supra, 375 U.S. at 418, 84 S.Ct. 461.

The briefs filed in this court could be submitted for consideration in state court, as counsel have stipulated here for consideration of the state court discovery proceedings.