Thomas O. DuVALL, Lucille C. DuVall and Ben C. Birdsall, Plaintiffs,

v.

G. E. MOORE, James E. Scherrman, G. E. Moore and James E. Scherrman, as Trustees of Midwest Employees' Profit Sharing Trust, Midwest Limestone Company, Incorporated, Defendants.

Civ. No. 66-C-2047-C.

United States District Court
N. D. Iowa,
Central Division.

Nov. 21, 1967.

See also D.C., 276 F.Supp. 674.

Lloyd Karr, Webster City, Iowa, for plaintiffs.

A. Arthur Davis, Donald A. Wine and Donald J. Brown, Des Moines, Iowa, for defendants.

## MEMORANDUM AND ORDER

HANSON, District Judge.

This ruling is predicated upon defendants' motion to stay the proceedings herein. Resistance has been filed thereto.

The Court will briefly summarize the course of the cause to date in order for the motion to be seen in proper perspective. On December 29, 1966, certain minority shareholders of Midwest Limestone Co., Incorporated, filed this action against majority stockholders of the Corporation. The plaintiffs held nonvoting shares in the corporation which were denied voting rights upon a resolution to amend the Articles of Incorporation of Midwest to provide for perpetual existence. The plaintiffs prayed, *inter alia*, that the amendment be set aside as illegal under Section 491.25 of the Code of Iowa because of the disallowance of voting power of the nonvoting stock upon its adoption. The plaintiffs further sought to have Section 491.25 declared in contravention of the State and Federal Constitutions if it were determined that that Section did not permit nonvoting stock to vote on such an amendment.

On August 30, 1967, the Court entered a Memorandum and Order in which it concluded that the amendment was illegally adopted under Section 491.25 because the Court construed the statute to bestow voting privileges upon nonvoting stock when voting upon whether or not the corporate life should be extended. The Court did not deem it necessary to reach plaintiffs' constitutional challenges.

On September 12, 1967, the plaintiffs responded to that ruling by introducing their own motion for summary judgment. On September 18, 1967, the defendants made application to stay the proceedings. The motion related that a declaratory judgment action had been commenced in Iowa District Court for Humboldt County by the defendants herein against one John A. Cloos. Cloos is also an owner of nonvoting stock in Midwest Limestone and was similarly denied the privilege of voting upon whether the corporate duration was to be prolonged. The affidavit of Ben C. Birdsall states that "upon information and belief, the state court action was commenced on or about September 14, 1967."

The general issue presented by the motion and resistance is simply whether the subject matter of the action is within the traditional confines of the abstention doctrine. There are two important subsidiary issues: Whether the law is sufficiently ambiguous and obscure upon the voting privileges of nonvoting stock to justify application of the doctrine; and, whether abstention is necessary in order to avoid the constitutional issues

presented as to Section 491.25 in light of the Court's previous Memorandum and Order.

■ The Court agrees with plaintiffs that the doctrine of abstention must be sparingly applied. As stated in Allegheny County v. Frank Mashuda Co., 360 U.S. 185, 188–189, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959):

"The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest."

One well-settled exception to the obligation of a federal court to decide a controversy before it lies in the situation where a state statute is challenged as being violative of the United States Constitution and the statute should be construed in the first instance by the courts of that state. See, e. g., Railroad Comm. of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971; City of Chicago v. Fieldcrest Dairies, Inc., 316 U.S. 168, 62 S.Ct. 986, 86 L.Ed. 1355; Spector Motor Service, Inc. v. McLaughlin, 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101; Alagama State Federation of Labor, etc. v. McAdory, 325 U.S. 450, 65 S.Ct. 1384, 89 L.Ed. 1725; American Federation of Labor v. Watson, 327 U.S. 582, 66 S.Ct. 761, 90 L.Ed. 873; Stainback v. Mo Hock Ke Lok Po, 336 U.S. 368, 69 S.Ct. 606, 93 L.Ed. 741; Shipman v. DuPre, 339 U.S. 321, 70 S.Ct. 640, 94 L.Ed. 877; Albertson v. Millard, 345 U.S. 242, 73 S.Ct. 600, 97 L.Ed. 983; Leiter Minerals, Inc. v. United States, 352 U.S. 220, 77 S.Ct. 287, 1 L.Ed.2d 267; Government & Civic Employees Organizing Committee, C. I. O. v. Windsor, 353 U.S. 364, 77 S.Ct. 838, 1 L.Ed.2d 894; City of Meridian v. Southern Bell Tel. & Tel. Co., 358 U.S. 639, 79 S.Ct. 455, 3 L.Ed.2d 562.

■ This exception was recently reviewed in Harman v. Forssenius, 380 U.S. 528, 534–535, 85 S.Ct. 1177, 1181, 14 L.Ed.2d 50 (1965):

"In applying the doctrine of abstention, a federal district court is vested with discretion to decline to exercise or to postpone the exercise of its jurisdiction in deference to state court resolution of underlying issues of state law. Railroad Comm. of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971. Where resolution of the federal constitutional question is dependent upon, or may be materially altered by, the determination of an uncertain issue of state law, abstention may be proper in order to avoid unnecessary friction in federal-state relations, interference with important state functions, tentative decisions on questions of state law, and premature constitutional adjudication. E. g., Railroad Comm. of Texas v. Pullman Co., supra. The doctrine, however, contemplates that deference to state court adjudication only be made where the issue of state law is uncertain. Davis v. Mann, 377 U.S. 678, 690, 84 S.Ct. 1441, 12 L.Ed.2d 609; McNeese v. Board of Education, 373 U.S. 668, 673–674, 83 S.Ct. 1433, 10 L.Ed.2d 622; City of Chicago v. Atchison, T. & S. F. R. Co., 357 U.S. 77, 84, 78 S.Ct. 1063, 2 L.Ed.2d 1174. If the state statute in question, although never interpreted by a state tribunal, is not fairly subject to an interpretation which will render unnecessary or substantially modify the federal constitutional question, it is the duty of the federal court to exercise its properly invoked jurisdiction. Baggett v. Bullitt, 377 U.S. 360, 375–379, 84 S.Ct. 1316, 12 L.Ed.2d 377."

■ In the situation in which constitutional issues are not involved, the Supreme Court has refused to permit abstention merely because state law is uncertain or difficult to determine. Meredith v. City of Winter Haven, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943). However, it appears that the Supreme Court

may have silently overruled the *Winter Haven* case and altered its position on abstention when the sole factor in its favor is the unsettled posture of state law. Kurtland, Toward a Co-operative Judicial Federalism; The Federal Court Abstention Doctrine, 24 F.R.D. 481 (1959); Note, Fifth Circuit Abstention Procedure—A Proposed Solution, 52 Iowa L. Rev. 686 (1967). In Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959), the City of Thibodaux had filed a petition for expropriation of the land, buildings, and equipment of the Louisiana Power & Light Company. The case was removed to the federal court where it was stayed pending an interpretation by the Supreme Court of Louisiana. The Supreme Court held that abstention was warranted. The Court viewed eminent domain as a proceeding of a special nature which justified submission of the controverted state statute to "the only tribunal empowered to speak definitively".

■ The instant case belongs to a species of cases which are more properly left to the "state courts as the final expositors of state law." England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 415–416, 84 S.Ct. 461, 465, 11 L.Ed.2d 440 (1964).

The Supreme Court of Iowa has never passed upon whether nonvoting stock is entitled to voting power upon a proposed extension of the corporate life and this Court finds itself able to do no more than to make a questionable prognosis of what it would hold if confronted with the problem.

The plaintiffs assert that the Supreme Court of Iowa pronounced the law upon this subject in Woodward v. Quigley, 257 Iowa 1077, 133 N.W.2d 38 (1965) and this Court so held in its Memorandum and Order. The Court did determine that the Iowa Supreme Court "laid down the principle that 'the statute was enacted to permit a majority to vote to renew the corporate life and at the same time allow a dissenting minority to get out of the corporation with the real value' of its stock." And the Court did say that if the statement were dicta, it was obligated to honor it as it was "suggestive of what the Iowa Supreme Court would probably hold in the instant case." However, the Woodward case involved the valuation of stock and the plaintiffs recognized "their obligation to purchase the stock under this statute". Id., 133 N.W.2d at p. 40.

The Iowa Supreme Court is the appropriate body to ordain whether the principle should be expanded beyond valuation to voting rights. A multitude of different policy considerations could enter such a determination. There is a good possibility that this Court's evaluation of the direction of the law of Iowa in this area is a miscalculation and that its judgment could be displaced tomorrow, particularly in view of the fact that the Court's prediction appears to be contrary to the trend in legislative enactments and judicial opinions in other jurisdictions.

■ The Complaint made a number of earnest constitutional complaints against Section 491.25 in the event its scope were limited to voting stock. The plaintiffs strenuously contend that since the Court avoided the constitutional questions in its Memorandum and Order, this case is drawn from the stream of decisions abstaining where there were possible constitutional infirmities in statutes. This is a commendable argument but it misconceives the nature and underlying basis of the doctrine when constitutional grievances exist. Although avoidance is a factor in this area of the doctrine, it is not utilized merely as a convenient escape route for federal courts wishing to avoid constitutional dilemmas. The abstention doctrine does not mechanically apply when constitutional questions are urged. As stated in Baggett v. Bullitt, 377 U.S. 360, 375, 84 S.Ct. 1316, 1324, 12 L.Ed.2d 377 (1963):

> "The abstention doctrine is not an automatic rule applied whenever a federal court is faced with a doubtful issue of state law; it rather involves a discretionary exercise of a court's

equity powers. Ascertainment of whether there exist the 'special circumstances,' Propper v. Clark, 337 U.S. 472, 69 S.Ct. 1333, 93 L.Ed. 1480, prerequisite to its application must be made on a case-by-case basis." (Citations omitted.)

Those "special circumstances" may exist when:

" * * * the federal courts, 'exercising a wise discretion', restrain their authority because of 'scrupulous regard for the rightful independence of the state governments' and for the smooth working of the federal judiciary. * * * This use of equitable powers is a contribution of the courts in furthering the harmonious relation between state and federal authority without the need of rigorous congressional restriction of those powers." (Citations omitted.) Railroad Comm. of Texas v. Pullman Co., supra, 312 U.S. at p. 501, 61 S.Ct. at p. 645.

 Therefore, the federal court must maintain a healthy respect for the rightful independence of the State and refrain from intermeddling in delicate problems which must rightfully be dealt with only by State judicial bodies. In such areas, the State court may avoid constitutional issues by its interpretation or it may not—that prerogative rests only with the State tribunal. Cf. England v. Louisiana State Board of Medical Examiners, supra. This court may still avoid any constitutional conflict in staying its hand as prescribed by the doctrine. But if in the wisdom of the Iowa courts such questions must be resolved, the court is under the obligation to do so. It would be incompatible with the doctrine for a federal court to avoid the constitutional determination now and discover by a later State decision that it bypassed a question of deep concern. The public policy behind the abstention doctrine is so strong that it must be applied, even though there is a possibility of later constitutional decision by its use at this point. Cf. Chicago, B. & Q. R. Co. v. City of North Kansas City, Mo., 276 F.2d 932 (8th Cir.). Further, the court cannot close its eyes to the possibility of an adverse judgment upon the Iowa law by a higher court which would restore the constitutional issues to vitality.

The case at hand is the type of case in which deference to the State courts must be made. A review of the Memorandum and Order of August 30 convinces this court that this is a sensitive issue lying in the domain of State concern. The corporation is the creature of the State. The Articles constitute a contract between the corporation and the shareholders and "the statutes of the state governing corporations and their organization are * * * a part of the contract." Berger v. Amana Society, 250 Iowa 1060, 95 N.W.2d 909, 912 (1959). Multiform policies peculiar to the particular state must be taken into account in the determination of whether nonvoting stock should be accorded voting rights upon a proposed corporate extension. This is vividly apparent from the Court's Memorandum and Order of August 30 and it will serve no useful purpose to again reiterate the analysis.

Struthers v. Robertson Lumber Co., 173 F.Supp. 204 (D.Minn.), involved an analogous stockholder controversy upon the term of a corporate entity. On p. 206, the court aptly related that:

"But most important would be the impropriety of our acting. * * * Here we are asked to exercise our authority, including our equitable powers, in a case involving the construction and constitutionality of the laws of a sovereign foreign state involving an internecine hassle between stockholders of a corporation created under that state's laws. We think this is a situation in which we should apply the doctrine of abstention. This embodies the exercise of our discretion to withhold the employment of our authority in a matter primarily of state concern because of the rightful independence of the state governments and the authority of their courts to determine controversies peculiar to the state." (Citations omitted.)

The corporation there was organized under the laws of North Dakota but the court does not feel that fact to be of crucial importance.

Further, the declaratory judgment procedure would seem to be an adequate device for a swift adjudication of the rights involved herein. Plaintiffs' rights will be protected and they will suffer no harm by its utilization.

Assuming that no constitutional questions are now present, the court would still be required to stay these proceedings. The crux of the Supreme Court's opinion in Louisiana Power & Light Co. v. City of Thibodaux, supra, that there was "'one differentiating characteristic of eminent domain: it is intimately involved with sovereign prerogative." This case similarly involves the exercise of sovereignty as previously pointed out.

The plaintiffs cite the *Winter Haven* case, supra, and apparently urge that the situations elaborated therein where abstention had been found to be proper are the exclusive categories in which abstention is warranted. Meredith v. City of Winter Haven, supra, 320 U.S. at 235–236, 64 S.Ct. 7. The Supreme Court in no way intended to delimit the variety of cases in which stay is proper and previous cases cited were only meant to be illustrations. On p. 236, 64 S.Ct. p. 12, the Court observed that:

> "In thus declining to exercise their jurisdiction to enforce rights arising under state laws, federal courts are following the same principles which traditionally have moved them, because of *like considerations* of policy, to refuse to give an extraordinary remedy for the protection of federal rights." (Emphasis added.)

Immediately after exploring those cases, the Court expressly held that "none of these considerations, *nor any similar one,* is present here." (Emphasis added.) Ibid. at p. 236, 64 S.Ct. at p. 12. It is also to be noted that the condemnation situation which arose in the *Thibodaux* case is not among the examples set forth. Moreover, it would appear that the instant case bears attributes similar to one

of the cases posed in the *Winter Haven* case.

■ This is an instance in which the Court "may refuse to appraise or shape domestic policy of the state governing its administrative agencies." (Citations omitted.) Id. at p. 235, 64 S.Ct. at p. 11. Section 491.6 of the Code of Iowa provides that the Secretary of State "shall refuse" to file Articles which in his opinion "are not in proper form to meet the requirements of the law, or that their object is an unlawful one, or against public policy, or that their plan for doing business is dishonest or unlawful". Section 491.7 provides that if a question of doubt arises as to the legality of Articles, the Secretary is to submit them to the Attorney General who must render an opinion upon their legality. If found illegal by the Attorney General, the Articles are not filed.

Although the Secretary of State does not have to be a party to litigation arising from Articles which he has approved, Berger v. Amana Society, supra, it appears he has a duty to supervise and control the filing of Articles in which the conflicting rights of stockholders "appear upon the face of the articles." In the case at bar, the fact that the non-voting stockholders were prevented from voting upon the amendment and that they vigorously dissented therefrom was manifest from the documents filed with the Secretary. It would seem that this court would be engaging in an unwarranted interference into the policies guiding his determination of validity by deciding this case.

■ The plaintiffs challenge the motion for stay as untimely. They argue that defendants have waived the motion by failing to present it before the Court's Memorandum and Order was entered. This contention is clearly without merit. Chicago, B. & Q. R. Co. v. City of North Kansas City, Mo., supra. Also see Division 1287, Amalgamated Association of Street, Electric Railway and Motor Coach Employees of America, AFL–CIO v. Dalton, 206 F.Supp. 629 (D.Mo.).

Finally, the plaintiffs argue that even though the interest of John A. Cloos is identical to those of plaintiffs herein, the plaintiffs are not parties to the State Court litigation and they cannot be required to pursue their remedies there. The short answer to this contention is that plaintiffs do not have to be parties to that litigation. See, e. g., City of Chicago v. Fieldcrest Dairies, Inc., supra; Landis v. North American Co., 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936); White v. Husky Oil Co., 266 F. Supp. 239 (D.Mont.). The primary concern in staying proceedings such as these lies in securing a concrete interpretation of the Iowa law. Leiter Minerals, Inc. v. United States, 352 U.S. 220, 77 S.Ct. 287, 1 L.Ed.2d 267 (1956). In any event, however, plaintiffs' rights can be fully and fairly protected in the State Court action as it appears that they can intervene if they desire under Rule 75 of the Iowa Rules of Civil Procedure.

Accordingly, it is hereby ordered that defendants' motion for stay is granted pending disposition of the State Court litigation upon the condition that such action is pursued with reasonable diligence.