**John DOE and Joe Smith, [the names of the plaintiffs are fictitious and anonymous pursuant to New York Public Health Law, Article 27–F], Plaintiffs,**

v.

**Charles HIRSCH, M.D., Chief Medical Examiner of the City of New York; and the City of New York, Defendants.**

**No. 90 Civ 1178 (CSH).**

United States District Court,
S.D. New York.

March 3, 1990.

Dienst & Serrins, New York City, for plaintiffs; Richard A. Dienst, of counsel.

Victor A. Kovner, Corp. Counsel, Pearl Zuchlewski, Asst. Corp. Counsel, New York City, Robert Abrams, Atty. Gen., State of N.Y., Lisa B. Raphael and Evelyn Tennenbaum, Asst. Attys. Gen., New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

This is an action brought by two New York City police officers pursuant to 42 U.S.C. § 1983. Plaintiffs seek injunctive relief from the City Medical Examiner and the City of New York directing them to disclose to plaintiffs the results of "HIV"

tests performed on a deceased individual. Plaintiffs also seek a judgement declaring sections of New York State Public Health Law, Article 27–F, the "HIV Confidentiality Law," unconstitutional facially and as applied to them.

The action is before this Court on plaintiffs' motion for a preliminary injunction.

## I

### Background

#### A

#### Statement of Facts

Plaintiffs, "John Doe" and "Joe Smith," were engaged in a joint F.B.I.—New York City Police Department operation on January 18, 1990, when, in the course of performing their official duties, they were directed to handle the body of a deceased person, "Sam Roe." [1] Sam Roe was shot and killed during his commission of a bank robbery. Prior to the robbery, Sam Roe had been observed using intravenous drugs.

While handling Sam Roe's bloody and bullet-ridden body, pieces of bloody glass penetrated plaintiffs' gloves and cut their fingers. Understandably, they became concerned about the risk of contracting AIDS. [2] Plaintiffs immediately requested from defendants the results of any HIV and Hepatitis tests performed on the body of Sam Roe. By letter dated February 7, 1990, addressed to defendant Hirsch, Chief Medical Examiner, plaintiffs requested the release of "the results of any disease testing that was conducted ... on the body of [Sam Roe]." To date, plaintiffs have received no information from the Medical Examiner.

#### B

#### The HIV Confidentiality Statute

On February 1, 1989, a comprehensive legislative scheme designed to insure the confidentiality of HIV and AIDS related information became effective in New York

---

1. Fictitious names are used to shield plaintiffs' identity and preserve their privacy.

2. *Cf.* the current litigation between the City and Dr. Prego.

State. This legislation which included amendments to the Social Services Law, the Insurance Law and the Public Health Law, was intended to balance the public health and civil rights issues implicated by AIDS. The legislative intent of this bill specifically

recognize[d] that maximum confidentiality protection for information related to human immunodeficiency virus (HIV) infection and acquired immune deficiency syndrome (AIDS) is an essential public health measure. In order to retain the full trust and confidence of persons at risk, the state has an interest both in assuring that HIV related information is not improperly disclosed and in having clear and certain rules for the disclosure of such information ... It is the intent of the legislature that exceptions to the general rule of confidentiality of HIV related information be strictly construed.

The Public Health law explicitly authorizes the Chief Medical Examiner to perform HIV related tests on dead persons "to determine the cause of death or for epidemiological purposes." § 2781(6)(c).

At § 2782(1), the law requires that any resulting information be held confidential, except in some limited circumstances:

No person who obtains confidential HIV related information in the course of providing any health or social service or pursuant to a release of confidential HIV related information may disclose or be compelled to disclose such information, except the following:

\* \* \* \* \* \*

(k) any person to whom disclosure is ordered by a court of competent jurisdiction pursuant to section twenty-seven hundred eighty-five of this article.

Section 2785 of the Law grants authority to a court "of competent jurisdiction" to order the disclosure of confidential HIV related information upon an application showing any one of four circumstances: (a) a compelling need for disclosure of the information for the adjudication of a criminal or civil proceeding; (b) a clear and imminent danger to an individual whose life or health may unknowingly be at significant risk as a result of contact with the individual to whom the information pertains; (c) upon application of a state, county or local health officer, a clear and imminent danger to the public health; or (d) that the applicant is lawfully entitled to disclosure and the disclosure is consistent with the provisions of this article.

§ 2785(2).

Even in these instances, however, the statute attempts to insure against minimal breaches of confidentiality by providing that proceedings will be conducted *in camera,* all records will be sealed, § 2785(3), and notice must be given to affected parties. § 2785(4).

## C

### *Procedural History*

On February 21, 1990, plaintiffs filed a complaint with this Court under 42 U.S.C. § 1983, claiming that the Medical Examiner, acting under color of state law, was depriving them of rights secured by the United States Constitution by failing to turn over the HIV information of Sam Roe. That same day, plaintiffs moved by Order to Show Cause for a preliminary injunction directing defendants:

to turn over to the plaintiffs or their health care representative, an autopsy report and any and all tests conducted by the defendants on a deceased person who may have had an "HIV" infection, an "HIV" related illness and/or "AIDS", so that the plaintiffs, if infected, may immediately undergo a course of medical therapy; ...

A hearing was scheduled for Friday, February 23, 1990.

At the hearing on February 23, 1990, the City, represented by the Corporation Counsel, and the Medical Examiner took the position that plaintiffs had an adequate remedy at law, namely, an order from a state court directing the confidential disclosure of the information pursuant to § 2785 of the HIV Confidentiality Law. Relying on *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), defen-

dants petitioned this Court to abstain from exercising its jurisdiction.

Plaintiffs' counsel responded that their remedy in state court was, at best, speculative. Plaintiffs suggested that they do not fall within the meaning of a "contact," which the legislature defined as:

an identified spouse or sex partner of the protected individual or a person identified as having shared hypodermic needles or syringes with the protected individual.

Public Health Law 27–F, § 2780(10). Since the exceptions to the law are to be narrowly construed, plaintiffs claim that a state court would not find that they had "contact" with the deceased for purposes of § 2785.

Because plaintiffs challenge the constitutionality of these provisions of the State Public Health Law, the Attorney General of the State was granted leave to intervene on behalf of the State Department of Health.

At the February 23 hearing, counsel from the Attorney General's office, to the visible surprise and discomfiture of the Corporation Counsel, expressed the preliminary view that § 2785 did *not* afford plaintiffs a remedy; and that under the statutory scheme plaintiffs perhaps had *no* remedy. Counsel stated:

The commissioner's position and the State Department of Health's position is that these plaintiffs ... do not fall within 2785. I stress this is preliminary and so I would be able to further brief this if it does not turn out to be the final position of the state, that contact is meant for the definition which is in the statute and that as sympathetic as the plaintiffs are, and no one is saying that they are not, that it is not easy as saying that they can get their relief under 2785.

\*     \*     \*     \*     \*     \*

The purpose of the statute ... is to encourage voluntary testing. And the reason that this statute and the reason that the legislature states that it should be strictly construed is so that the idea of voluntary testing will be supported by confidentiality.

\*     \*     \*     \*     \*     \*

The entire point of confidentiality is that if there is any sort of specter upon confidentiality, anything that would in any way inhibit an individual from getting tested, the essential public safety here is so important that it overrides something happening to an individual.

Hearing Tr. at 29, 36, and 37.

The State requested and was granted an adjournment of the hearing to February 27, 1990, in order to refine its position and submit supporting papers.

At the hearing on February 27, 1990, the State made an about-face. The State now contends that § 2785 "provides a legal remedy for the exact relief [plaintiffs] seek." State's Memorandum at p. 11. The State joined the City defendants in requesting that this Court abstain from exercising its jurisdiction.

## II

### Discussion

The central issue presented is whether this Court should abstain from exercising its jurisdiction. This Court has subject matter jurisdiction in this case because plaintiffs' constitutional claims are not frivolous and are sufficiently substantial to invoke this Court's jurisdiction under the rule of *Hagans v. Lavine,* 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). *See also Riddick v. D'Elia,* 626 F.2d 1084, 1087–88 (2d Cir.1980).

Plaintiffs' complaint alleges that the HIV Confidentiality Law forbids defendants from anonymously disclosing Sam Roe's HIV related information or prevents them from releasing the information without first obtaining a court order. Plaintiffs argue that they are thereby deprived of life and liberty without due process of law and of the equal protection of the laws.

If the proper construction of the Confidentiality Law is that plaintiffs cannot invoke § 2785—as originally suggested by the Attorney General—and have no other state law remedy, significant federal constitutional issues plainly arise. Under the

Due Process Clause, plaintiffs would arguably state a claim for a constitutional tort under 42 U.S.C. § 1983. *See Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Davidson v. Cannon,* 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986); *Barbara v. Smith,* 836 F.2d 96 (2d Cir.1987). Defendants are acting deliberately, rather than negligently, and their conduct would be arbitrarily depriving plaintiffs of life, health and protected liberty and privacy interests, such as conjugal relations. Under the Equal Protection Clause, plaintiffs may state a claim for heightened scrutiny, given that the law touches upon important, if not fundamental, rights. *See Plyler v. Doe,* 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982). There is no readily ascertainable policy reason why these police officers should not be able to access the HIV related information of Sam Roe, while someone who shared a hypodermic needle or had sex with Roe could get a court order under § 2785. *See Skinner v. Oklahoma,* 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942).

Had the State persisted in its earlier position that plaintiffs had no legal remedy under the Public Health Law, I would not abstain and would address the merits of the requested injunction. Under that scenario, the State, as intervenor-defendant, would have been in the untenable position of requesting that this Court abstain while at the same time seeking to block plaintiffs' access to state remedies. As I noted at the hearing on February 23:

> [The State is] saying, if I am following you, that under the doctrine of abstention, [plaintiffs' counsel] and his client should apply to a state judge under Section 2785 and when they get there, you will meet them at the door and say they have no business being there ...

Hearing Tr. at 30.

However, with all defendants in agreement that plaintiffs are entitled to relief

under § 2875—if they make the proper showing required by that statute—this case is a candidate for abstention under *Railroad Commission of Texas v. Pullman,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).[3]

In *Pullman,* the Supreme Court was dealing not with a state statute but rather with an order of the Texas Railroad Commission that provided that "no sleeping car shall be operated on any line of railroad in the State of Texas ... unless such cars are continuously in the charge of an employee ... having the rank and position of Pullman conductor." *Id.* at 497–98, 61 S.Ct. at 644. At the time, conductors on Pullmans were white, while porters were black. The Pullman Company, the railroads and the porters, as intervenor-complainants, brought suit claiming the order violative of the Equal Protection, Due Process and Commerce Clauses. There was a lingering state law question, however, as to whether the order was within the Commission's authority. Thus, the Court noted:

> The complaint of the Pullman porters undoubtedly tendered a substantial constitutional issue. It is more than substantial. It touches a sensitive area of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open. Such constitutional adjudications plainly can be avoided if a definitive ruling on the state issue would terminate the controversy.

*Id.* at 498, 61 S.Ct. at 644. The Court chose to abstain from exercising federal jurisdiction and remanded the case to the district court "with directions to retain the bill pending a determination of proceedings, to be brought with reasonable promptness, in the state court in conformity with this opinion." *Id.* at 501–02, 61

---

**3.** Though defendants argue for *Burford* abstention, a critical element of the *Burford* doctrine is missing in the case at bar, namely, a complex regulatory scheme administered by a specialized state tribunal having exclusive jurisdiction. *See Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); *Allegheny Airlines v. Pennsylvania Public Utility Commission,* 465

F.2d 237, 241–45 (3d Cir.1972), *cert. denied,* 410 U.S. 943, 93 S.Ct. 1367, 35 L.Ed.2d 609 (1973); *see generally,* 1A J. Moore, *Federal Practice,* ¶ 0.203[2] at 2140–41 (collecting cases). Because there does not exist here a complex administrative scheme, as in *Burford,* but instead a simple and straightforward state law, as in *Pullman,* I decline to abstain under *Burford.*

S.Ct. at 645–46. The Court reasoned that the request for injunctive relief was equitable in nature and that a court of equity should refrain from deciding a federal issue where the resolution rests on a tentative conclusion of state law that "may be displaced tomorrow by a state adjudication." *Id.* at 500, 61 S.Ct. at 645. The Court explained:

> The history of equity jurisdiction is the history of regard for public consequences in employing the extraordinary remedy of the injunction.... The[ ] cases reflect a doctrine of abstention appropriate to our federal system whereby the federal courts, "exercising a wise discretion," restrain their authority because of "scrupulous regard for the rightful independence of the state governments" and for the smooth working of the federal judiciary. This use of equitable powers is a contribution of the courts in furthering the harmonious relation between state and federal authority without the need of rigorous congressional restriction of those powers.

*Id.* at 501, 61 S.Ct. at 645.

*Pullman* has come to be associated with the rule "that federal courts should abstain from decision when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided." *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 236, 104 S.Ct. 2321, 2327, 81 L.Ed.2d 186 (1984). To be sure, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule," *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976), and is to be decided on a case-by-case basis. I nevertheless conclude that the case at bar presents a situation where I should abstain.

The case at bar presents several substantial constitutional questions which may very well be avoided by an interpretation of the HIV Confidentiality Law that appears most reasonable. A state court could—and, I believe, most likely would—conclude that the plaintiffs here are entitled to relief under § 2785 of the statute. Plaintiffs' interpretation of the law is somewhat tortured. It is true that the noun "contact" is defined in the statute to include only sexual and drug partners. § 2780(10). In addition, the exceptions to the law are to be narrowly construed. However, the provision for court ordered disclosure of HIV information applies to anyone who may be "at significant risk as a result of *contact* with the individual to whom the information pertains ..." § 2785 (emphasis added). In this context, the word contact is used as a verb—not a noun. The verb "contact" has a broader meaning than merely sexual intercourse and shared hypodermic needles. There is no reason that it would not include the kind of contact that the police officers had with Sam Roe's body.

At the same time, however, this is a significant and unresolved question of state law. No court of the State of New York has addressed the question.[4] The likely resolution in state court is that the plaintiffs will obtain the confidential information—in light of the shared opinion of the City, Medical Examiner and State that plaintiffs are entitled to a court order. Were a state court to order disclosure of

---

**4.** Plaintiffs direct our attention to one case, *Brown v. Latella* (J. Shapiro) (May 2, 1989). There, however, the Court dealt—and only tangentially—with the rule requiring a written release before any doctor can order the performance of an HIV related *test*, § 2781. In that case, a transit police officer sought to compel an HIV test of blood samples taken from a person that he had arrested on narcotics charges. Apparently, while arresting and searching the suspect, the officer had suffered a puncture from the suspect's hypodermic needle. The suspect, however, absconded and could not be located. While the case was mooted because plaintiff ultimately found the individual and obtained a written consent, the Court observed that the law provided no mechanism to compel *testing*. The Court noted:

> the legislature overlooked and did not contemplate situations such as the one presented in this proceeding. As a result they failed to enact any provision which would give the courts an area of discretionary power to avoid strict compliance with the statutory requirements.

In contrast, however, the statute does provide a mechanism to compel *disclosure* of HIV test results. *See* § 2785.

the HIV information, the substantial federal constitutional questions would evaporate. There would be no disparate treatment for an equal protection claim. In addition, though I intimate no view on the merits, the court procedure under § 2785 would likely satisfy the Due Process Clause. Accordingly, abstention in the case at bar would serve to avoid unnecessary encroachment of state authority by the federal courts and to promote "the harmonious relation between state and federal authority." *Pullman* 312 U.S. at 501, 61 S.Ct. at 645.

Judge Friendly, writing for the Second Circuit in *Goldberg v. Carey*, 601 F.2d 653, 658–59 (2d Cir.1979), observed:

> One type of case almost universally recognized as appropriate for abstention is that of a state statute, not yet construed by the state courts, which is susceptible of one construction that would render it free from federal constitutional objection and another that would not. A federal court should not place itself in the position of holding the statute unconstitutional by giving it the latter construction, only to find that the highest court of the state will render the decision futile and unnecessary by adopting the former. Such a decision not only is a waste of judicial resources but provokes needless collision between state and federal power.

The case at bar is just such a case.

I have considered whether the extraordinarily difficult and worrying circumstances confronting these police officers constitute an emergency militating against abstention which would otherwise be appropriate. There is authority for that proposition. *See Pike v. Bruce Church, Inc.*, 397 U.S.

137, 140 n. 3, 90 S.Ct. 844, 846 n. 3, 25 L.Ed.2d 174 (1970) ("[i]n view of the emergency situation presented, and the fact that only a narrow and specific application of the Act was challenged as unconstitutional, the court was fully justified in not abstaining from the exercise of its jurisdiction pending litigation in the state courts"); *Harman v. Forssenius*, 380 U.S. 528, 537, 85 S.Ct. 1177, 1183, 14 L.Ed.2d 50 (1965) ("[g]iven the importance and immediacy of the problem, and the delay inherent in referring questions of state law to state tribunals, it is evident that the District Court did not abuse its discretion in refusing to abstain").

However, as *Harman* indicates, it is the combined effect of a problem's immediacy and the lack of a prompt remedy under state law that justifies a refusal to abstain where abstention would otherwise be indicated. In the case at bar, the present representations of both State and City defendants are that plaintiffs are entitled to receive, and defendants will assist in their obtaining, prompt relief in the form of a § 2785 state court order. Nor can I imagine a state court judge failing to respond to the human urgency of this case.[5]

### III

#### *Conclusion*

For the foregoing reasons, I will abstain in this case, but retain jurisdiction pending a determination by the state court whether plaintiffs are entitled to relief under § 2785. *Pullman*, 312 U.S. at 501–2, 61 S.Ct. at 645–6.[6] The parties are directed to proceed in the state court with all possible dispatch. Plaintiffs' request for injunctive relief directing defendants to disclose the

---

5. If, as all defendants now indicate, a prompt statutory remedy awaits plaintiffs in the state court, plaintiffs' constitutional claim is reduced to one that they should be relieved of following the state's statutory due process. That is not nearly as viable a constitutional claim as those that arise if state law does not afford plaintiffs a remedy, or a prompt resolution of their needs.

6. I note that plaintiffs have reserved their right to return to this Court on their federal claims once the state court has resolved whether they are entitled to relief under § 2785. *England v.*

*Louisiana Board of Medical Examiners*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964). Plaintiffs are accordingly advised that, under the *England* procedure, they should reserve their right to return to this Court on the state record and should not litigate their federal claims in state court but rather "inform th[e state] courts what [their] federal claims are, so that the state statute may be construed 'in light of' those claims." *England, supra* at 420–21, 84 S.Ct. at 467.

HIV related information of Sam Roe is denied without prejudice to its renewal if the proceedings in state court do not proceed with reasonable promptness.

It is SO ORDERED.