**Phyllis SCIRICA–BOSSHART, Plaintiff,**

v.

**Mary Jo BANE, as Commissioner of the New York State Department of Social Services, Defendant.**

**Nos. 92–CV–0212 (JRB), 91 CV–538.**

United States District Court, E.D. New York.

June 24, 1994.

Peter Vollmer, Freeport, NY, for plaintiff.

Robert Abrams, Atty. Gen. of the State of N.Y. by Richard T. Mathieu, New York City, for defendant.

---

# MEMORANDUM–DECISION AND ORDER

BARTELS, District Judge.

The plaintiff Phyllis Scirica–Bosshart, a recipient of public assistance provided under several government entitlement programs, moves this Court under Rule 56 of the Federal Rules of Civil Procedure for summary judgment. The amended complaint, which seeks declaratory and injunctive relief, asserts various constitutional, statutory, and regulatory challenges to defendant's refusal to hold administrative fair hearings in plaintiff's home.[1] The defendant Mary Jo Bane, as Commissioner of the New York State Department of Social Services ("DSS"), cross-moves under Rule 56(b), urging this Court to dismiss the amended complaint in its entirety on the ground that plaintiff's federal and state law challenges fail to state claims upon which relief can be granted. Defendant also petitions this Court to abstain from exercising its jurisdiction. For the reasons set forth below, the Court abstains from hearing the present action, and stays all proceedings in this Court pending state court resolution of related questions of state law.

## Background

This case calls into question the constitutional sufficiency of the revised administrative "fair hearing" policy implemented by DSS. A welfare applicant or recipient traditionally could challenge a local agency's denial of or change in public assistance benefits by appealing such action to DSS by way of an administrative "fair hearing," which defendant describes as an evidentiary hearing conducted in the presence of a hearing officer with the client appearing either in person or through a representative. *See* Defendant's Local Rule 3(g) Statement, dated November 20, 1992 ("Defendant's 3[g] Statement"), ¶ 1. Under the former policy— which remained in place through in or about

---

1. Plaintiff previously filed an action with this Court, entitled *Bosshart v. Perales,* 91–CV–0538 (RJD) (*"Bosshart I "*), alleging constitutional and statutory violations arising from defendant's failure to convene home fair hearings. Defendant settled the merits of that action by agreeing to conduct a fair hearing in plaintiff's home. The events precipitating the present action occurred after resolution of *Bosshart I.*

November 1990—DSS held fair hearings at the home or institutional residence of all qualified "homebound" applicants or recipients. "Homebound" clients include those individuals hospitalized at the time of a scheduled hearing or whose disabling conditions substantially impair their mobility, preventing personal attendance at a hearing site. DSS conducted fair hearings at the homes of those homebound clients who chose not to appear at a hearing site through a representative.

By memorandum dated November 19, 1990, DSS informed individuals who had requested in-home hearings that fiscal constraints necessitated the abolition of all home administrative fair hearings. In their stead, DSS began to conduct "central site hearings," at which homebound appellants would appear at a centrally located hearing site chosen to accommodate clients located within a fixed geographic area. Clients typically appeared at such hearings personally, with transportation (*e.g.*, Access–a–Ride, Taxi, and ambulette services) provided free of charge or fully reimbursed at the time of the hearing. If completely unable to travel, clients had the option to appear through a representative.

On or about December 9, 1991, DSS implemented the use of telephone hearings to facilitate further the conduct of fair hearings for homebound appellants. Institution of the telephone hearing mechanism enabled homebound clients to present their cases to the hearing officer personally without having to appear at a central hearing site, thus removing the necessity for travel. Hearings by telephone also eliminated the need to use representatives, whose appearance before the hearing officer, some argue, can be significantly less effective than that of the appellant. Defendant urges that these changes were adopted in an attempt to rectify a broad array of financial and logistical problems engendered by the in-home hearing process. *See* Defendant's 3(g) Statement, ¶¶ 9–14.

Following abolition of home hearings but prior to implementation of the telephone hearing mechanism, homebound fair hearing appellants sued the then Commissioner of

DSS in *Varshavsky v. Perales,* No. 40767/91, which currently is pending in the Supreme Court of the State of New York, New York County. There homebound appellants allege that the administrative fair hearing policy changes instituted by DSS violate their procedural due process rights, discriminate against them on the basis of handicap, and violate a host of state and federal regulation, including the formal rule-making procedures of the New York State Administrative Procedure Act. Although the court granted class certification to the plaintiffs in *Varshavsky,* plaintiff Bosshart neglected to intervene in that action.

On or about March 16, 1992, the *Varshavsky* court preliminarily enjoined defendant from terminating the home hearing program. Based on principles of due process espoused by both federal and state courts and the statutory requirements set forth in the United States Code, the Code of Federal Regulations, and the New York State Codes, Rules, and Regulations, the *Varshavsky* court held that plaintiffs demonstrated a reasonable likelihood of success on the merits of their constitutional and statutory challenges to the revised hearing system. In a decision dated March 1, 1994, the Appellate Division, First Department, affirmed the holding in *Varshavsky.* Focusing its discussion on the state law prohibition against limiting or interfering with the right to a hearing (18 N.Y.C.R.R. 358–3.1), and the right to appear at a fair hearing held at a time and place convenient to the applicant taking into consideration any inability to travel (18 N.Y.C.R.R. 358–3.4[g], [j] ), the First Department held that plaintiffs had demonstrated likelihood of success on the merits of their claims and irreparable harm resulting from the abolition of in-home hearings.

Plaintiff Bosshart, a 39–year–old woman, allegedly suffers from a variety of physical and psychological disorders, including chronic obstructive pulmonary disease, asthmatic bronchitis, major depression, and agoraphobia. The presence of these conditions heretofore have entitled her to public assistance benefits in the Home Relief Category [2] from

---

**2.** Home Relief, authorized by Section 157 of the    New York Social Services Law, is a general

the New York City Department of Social Services, and Supplemental Security Income ("SSI")[3] from the Social Security Administration.

Plaintiff claims that her degenerative state of physical and mental health prohibit travel by means of public transportation, qualifying her for "homebound" status and rendering impossible her personal appearance at central fair hearing sites. Indeed, prior to implementation of the revised hearing process, DSS had conducted administrative fair hearings for plaintiff in her home. Since the system has been revised, however, plaintiff has been offered the choice between free transportation to a central hearing site, conduct of a hearing at a central site in the presence of her chosen representative, or hearing by telephone at any location she desires. Plaintiff has rejected all defendant's offers of such alternatives and maintains that any option short of a fair hearing conducted within the confines of her home fails to provide her with due process of law, discriminates against her on the basis of handicap, and violates a myriad of federal and state laws regulating the entitlement programs at issue here.

Defendant counters that in order for DSS to continue to process the appeals of homebound clients, administrative, logistical, and fiscal constraints necessitate the use of alternatives to the home hearing mechanism. Substantial incidental costs, such as the cost of continuing benefits during the pendency of a hearing ("aid-continuing"), and extended delays occasioned by an extremely heavy case load and a lack of adequate staffing, collectively have led to an overburdened system that defendant claims was in the process of "breaking down" at the time the changes were instituted. *See* Defendant's 3(g) Statement, ¶¶ 9–14. Defendant argues that imple- menting additional facilitating measures, including free transportation, pre-hearing disclosure of agency documents allegedly supporting the denial or termination of benefits, and the use of portable cellular phones to accommodate the needs of homebound appellants without telephones, has enabled DSS to adapt to the growing demand for appellate review while adequately safeguarding the constitutional and statutory rights of homebound clients.

## Discussion

Before the Court can address the vast array of constitutional and statutory issues raised on these cross-motions, it is necessary first to determine whether the Court properly should abstain from hearing this action. Defendant proposes that the existence of unclear state law issues, the pendency of a state court class action raising issues nearly identical to those implicated here, and the interest New York State likely has in resolution of this action collectively demonstrate "exceptional" circumstances warranting abstention under *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).[4]

As plaintiff correctly notes, abstention requires the district courts to relinquish their "unflagging duty to adjudicate matters properly within their jurisdiction," *Greater New York Metro. Food Council v. McGuire*, 6 F.3d 75, 77 (2d Cir.1993), and thus remains "the exception, not the rule." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). However, the United States Supreme Court has directed the district courts to apply the abstention analysis "in a pragmatic, flexible manner with a view to the realities of the case at hand," *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21, 103 S.Ct. 927, 940, 74

---

assistance program financed and administered by New York State and local governments. The program provides assistance to individuals who are not self-supportive and who are unable to secure necessary support from other sources.

**3.** SSI benefits, authorized by Title XVI of the Social Security Act (42 U.S.C. §§ 1382, *et seq.*), are awarded to aged, blind, or disabled individuals who earn little or no income.

**4.** The Court rejects plaintiff's argument that assertion of a civil rights claim precludes application of the abstention doctrine. Reliance on civil rights statutes and the existence of federal statutory claims do not bar the federal courts from exercising the discretion to abstain. *See Askew v. Hargrave*, 401 U.S. 476, 91 S.Ct. 856, 28 L.Ed.2d 196 (1970); *Clay v. Sun Ins. Office Ltd.*, 363 U.S. 207, 80 S.Ct. 1222, 4 L.Ed.2d 1170 (1960).

L.Ed.2d 765 (1983), such that the determination of whether "special circumstances" warranting abstention are present is made on a case-by-case basis. *Jancyn Mfg. Corp. v. County of Suffolk,* 583 F.Supp. 1364, 1371 (E.D.N.Y.1984) (citing *Baggett v. Bullitt,* 377 U.S. 360, 375, 84 S.Ct. 1316, 1324, 12 L.Ed.2d 377 [1964]). Viewing the particulars of this case in just such a manner leads the Court to the conclusion that it should stay its hand and relinquish jurisdiction over the action until resolution in the state forum of important and potentially determinative state law issues.

■ Defendant invokes abstention of the type ordered in *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). However, the present case apparently lacks what a number of courts have considered a critical element of the *Burford* doctrine; that is, the existence of a "complex regulatory scheme *administered by a specialized state tribunal having exclusive jurisdiction." Doe v. Hirsch,* 731 F.Supp. 627, 631 n. 3 (S.D.N.Y.1990) (emphasis added) (citing *Burford, supra*). Thus, although the Court agrees that this action presents a suitable case in which to exercise its authority to abstain, the Court finds that it more appropriately presents a candidate for abstention under *Railroad Comm'n of Texas v. Pullman,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). In *Pullman,* the United States Supreme Court held that a district court may abstain from deciding questions of federal constitutional law where resolution of related questions of state law might render the federal constitutional challenge moot. Thus, where a state court may construe a state statute in a manner that will avoid the constitutional claim, *Pullman* permits the district court to stay the federal proceedings pending resolution of the state law issue. *See, e.g., Greater New York Metro. Food Council,* 6 F.3d at 77; *United Fence & Guard Rail Corp. v. Cuomo,* 878 F.2d 588, 594 (2d Cir. 1989) (discussing *Pullman* doctrine).

This action manifests each of the three prerequisites necessary to justify *Pullman* abstention. Those conditions require that:

First, the state statute must be unclear or the issue of state law uncertain; second, resolution of the federal issue must depend upon the interpretation given to the ambiguous state provision; and third, the state law must be susceptible of an interpretation that would avoid or modify the federal constitutional issue.

*United Fence & Guard Rail Corp.,* 878 F.2d at 594 (citing *Zwickler v. Koota,* 389 U.S. 241, 248–49, 88 S.Ct. 391, 395–96, 19 L.Ed.2d 444 [1967]).

■ The present case implicates federal constitutional questions that may be avoided by the state tribunal's interpretation of the state laws regulating the provision of administrative fair hearings. The court in *Varshavsky* currently is faced with precisely the same issues that confront the Court here: The state court will be required to determine whether various alternatives to face-to-face, in-home hearings—including telephonic fair hearings, the provision of transportation to and from central hearing sites, and the appearance by representatives of claimants at fair hearings—meet statutory and regulatory requirements and adequately safeguard the constitutional rights of homebound appellants.

Sections 358–3.4(g) and (j) of Title 18 of the New York Codes, Rules, and Regulations reasonably are susceptible of a construction that would require DSS to conduct face-to-face, in-home hearings for all homebound clients who refuse to waive the right personally to appear at and participate in a fair hearing. If the *Varshavsky* court were to reach such a conclusion, the substantial federal constitutional questions here involved would disappear. Indeed, the very foundation upon which plaintiff bases all of her constitutional and statutory challenges would evaporate. Abstention properly follows where, as here, "a state law is susceptible to an interpretation that will make it unnecessary to decide the federal constitutional question." *United Fence & Guard Rail Corp.,* 878 F.2d at 594 (citing *Hawaii Hous. Auth. v. Midkiff,* 467 U.S. 229, 236, 104 S.Ct. 2321, 2327, 81 L.Ed.2d 186 [1984]).

Moreover, the proper construction of 18 N.Y.C.R.R. § 358 presents a significant and unresolved question of state law. That section requires that an appellant be accorded the right to appear at and participate in a fair hearing held at a time and place convenient to him, taking into consideration his

inability to travel. 18 N.Y.C.R.R. §§ 358–3.4(g) and (j). Although DSS presumably has interpreted this regulatory mandate as requiring something less than in-home, face-to-face hearings, such an administrative interpretation does not "suffice as an authoritative reading of state law" that eliminates any inherent ambiguity. *United Servs. Auto. Ass'n v. Muir*, 792 F.2d 356, 361 (3d Cir. 1986), *cert. denied, Grode v. United Servs. Auto. Ass'n*, 479 U.S. 1031, 107 S.Ct. 875, 93 L.Ed.2d 830 (1987). *Varshavsky* presents an opportunity for authoritative action by the state judiciary. The desire to avoid "unnecessary encroachment of state authority," *Doe*, 731 F.Supp. at 633, and to "promote the harmonious relation" between state and federal law on this issue, *Pullman*, 312 U.S. at 501, 61 S.Ct. at 645, counsels this Court to defer to the state court resolution of the important and determinative state law issues raised here.

### Conclusion

For the reasons set forth above, the Court hereby abstains from exercising its jurisdiction in the present action, and the cross-motions for summary judgment and all further proceedings in the instant action hereby are STAYED pending resolution in the state forum of related questions of state law.

SO ORDERED.